CASON *et al. vs.* WALTON, administrator, *et al.*

[JACKSON, Justice, being related to the parties litigant, Hon. John W. H. Underwood, Judge of the Superior Courts of the Rome Circuit, was designated by the Governor to preside in his place.]

1. A court and jury, upon the trial of a divorce case, have not the province to dispose of property that does not belong to the husband or wife, or which property in remainder is vested in a child or children of the parties to the marriage.

2. The court and jury trying and deciding the case under our law, could only dispose of such property as was owned by the husband or the wife at the time of the application for divorce, or at the time of the separation of the parties.

3. When a *feme covert* has a life estate only in property, with remainder at her death to her children, a court and jury cannot make provision for the wife or child or children out of the estate in remainder, but could dispose of the estate for life for such purposes.

4. The record and proceedings in a suit for divorce between husband and wife, are not proper evidence in a case wherein the children sue as remainder men as against them.  Such record could be used in evidence to conclude the wife as to any interest in the estate of her late husband, or her own estate, existing at the time of the application for divorce or separation.

Husband and wife.  Title.  Jurisdiction.  Estates.  Judgments.  *Res adjudicata.*  Before Judge GIBSON.  Richmond Superior Court.  April Term, 1878.

. Reported in the opinion.

FRANK H. MILLER, for plaintiffs in error, cited as follows : Assent of executor inured in favor of all complainants, Code, §2270; 50 *Ga.*, 362 ; foreign will title in Georgia, 31 *Ga.*, 593.   What disposed of by divorce suit, 11 *Ga.*, 398, 379 ; 49 *Ib.*, 303; 54 *Ib.*, 285 ; 58 *Ib.*, 93 ; Code, §§1720, 1733 ; 54 *Ga.*, 286 ; Code, §§2261, 1717, 3479, 1721 ; 59 *Ga.*, 157; 29 *Ib.*, 545.

BARNES & CUMMING, for defendants, cited, (that life tenant was estopped and remainder-men not affected), Code, §§1720, 1722 ; 43 *Ga.*, 294; 2 Bish. on Mar. & Div., 516 ; 20 *Ga.*, 120 ; 43 *Ib.*, 294.

UNDERWOOD, Judge.

It appears from the record and proceedings in this case, that Emily B. Cason, formerly Eliza Emily Barnett, then the wife of Robert E. Cason, and her children, May Adams, by her guardian, Walter E. Cason and Zillah A. Cason, by their parent and natural guardian, filed a bill on the equity side of the superior court of Richmond county, for account, injunction and relief, against " The Union Trust Company of New York," as administrator with the will annexed of Flournoy W. Adams, deceased, late of the city of New

York, Howell Cobb and Adolphus K. Childs, of Clarke county, Georgia, and Habersham I. Adams, of Richmond county, Georgia, and the Georgia Railroad and Banking Company of Georgia. The bill alleges that William H. Barnett, of Chambers county, Alabama, died, having made a will bearing date May 20, 1856, duly proved and admitted to record on the 30th day of June 1856. The material portions of which will, so far as concerns this case, are as follows :

"Item fourth. My will and desire is that my negroes, not otherwise disposed of, shall be equally divided between my six children hereafter named to-wit : "Francina E. Matthews, wife of Robert C. Matthews, Melita S. Eberhart, wife of William F. Eberhart, Martha S. Colquitt, wife of William T. Colquitt, Eliza E. Barnett, Zilla A. Barnett and William B. Barnett, so as to make them all equal except my daughter, Nancy, to whom I have given ten dollars, which is all she is to receive from my estate ; and to my son William B. Barnett, I have given him three negroes and a gold watch as above named."

"Item sixth. My will and desire is, and I do hereby give and bequeath, all of the property of every description that I have given, or may hereafter give, to each of my daughters : I give to them and their children, heirs of their body, and not subject to be sold by their respective husbands, or liable for debts in any manner whatever."

The bill alleges that Emily B. Barnett married Flournoy W. Adams on the 22d day of July 1857, and received from the executor of William H. Barnett the property bequeathed ɔ her in the will of her father, and held and enjoyed and retained the same until his (Adams') death, which occurred in November, 1874 ; that on the 21st day of March, 1865, Flournoy W. Adams commenced his action of divorce against Emily B. Adams, in Oglethorpe superior court, on the ground of desertion. A copy of which suit was served personally on the defendant, March 25, 1865. The plaintiff filed a schedule of property, March 21st, 1865. Sworn to, March 22, 1865.

The schedule contained the property of the plaintiff as well as the property in which Mrs. Emily B. Adams had a life estate with remainder to her children.

On the 17th day of October, 1865, the plaintiff amended the schedule of property to show the amount of plaintiff's entire property at that time, which amounted to $12,750.29, over and above his debts. A second verdict authorizing a total divorce was granted on the 18th of April 1866, and a special verdict was rendered as follows:

"For the disposition of the property, money, and assets named in the schedule of the plaintiff, we find and decree that said property, money and assets, including as well what he holds in his own right, as what is in his hands as belonging to his wife, be disposed of as follows: The plaintiff shall pay into the hands of Mr. Benjamin H. Barnett, of this county, as trustee, the sum of twenty-five hundred dollars, for the sole and separate use of the defendant, to be disposed of as she may direct, by will or otherwise. The plaintiff shall also pay into the hands of said Barnett, as trustee, the further sum of twenty-five hundred dollars in trust to pay over annually to defendant the interest thereon during her life, and at her death to pay over the same to May Adams, the child of the parties, or her heirs. The remainder of the property, money and assets, shall be vested in the plaintiff.

"We find and decree that May Adams, the child of the parties, shall remain with and under the care and direction of her mother, the defendant, until she comes to lawful age, unless otherwise ordered by a competent court. We find that said child shall be boarded by her mother, without charge, as long as she remains under her mother's care; but her father shall be responsible for just and reasonable charges for her clothing and education.

"We find and decree that both parties shall be at liberty to marry at their own discretion, as though they had never contracted any previous marriage."

[Signed]                    H. KINNEBREW, *Foreman.*"

The bill charges that Flournoy W. Adams died without having in his lifetime fully complied with the decree in the divorce case, that said Emily B. married Robert E. Cason, July 29, 1869, and has issue the complainants, Walter E., and Zella A. Cason ; that when Flournoy W. Adams removed to New York, he carried with him all his property except thirty shares of Georgia Railroad stock, which was charged to have been purchased with the money received under the will of Wm. H. Barnett, deceased.

The bill waived discovery. The prayer was to protect complainants as citizens of Georgia, and prohibit the transfer of the stock by the foreign administrator or Georgia executors, until they do equity and pay complainants the amount due them at the death of Adams—both what was received under said will of Wm. H. Barnett, and the decree in the divorce case. The bill also prayed for the appointment of a receiver, etc.

The Union and Trust Company was never served. Howell Cobb and A. K. Childs were served and answered, having renounced as executors, never qualified. Habersham I. Adams answered and pleaded the decree in the divorce suit in bar to complainants' relief, etc.

John M. Walton, of Richmond county, Georgia, having, subsequent to the filing of the bill, taken out letters of administration with the will annexed on the estate of Flournoy W. Adams, was made a party, and the case came on to be heard at the April term, 1878, of Richmond superior court.

When the pleadings had been read (the bill and answers of the defendants who had been served), and before the introduction of any of the evidence, complainants' solicitor, under the act of 1876, made the request as required in said act, for the special finding of the facts in the case, which was granted. The question then arose as to the effect of the divorce proceedings and the schedule annexed, which was discussed by counsel, when the court decided that the same was *prima facie* evidence against complainants, and could only be overcome by positive and conclusive proof.

He also decided that Mrs. Cason was presumptively bound by the statements in the amended schedule fixing the value of the property at the end of the war.

The case then proceeded to the jury.

Evidence entirely documentary was submitted, as will appear with the transcript of the record, as follows:

For complainants: 1. Answer of the Georgia Railroad and Banking Company. 2. Exhibit A to complainants' bill. 3. Copy from the record from Alabama showing payment made to F. W. Adams by executor of Wm. H. Barnett.

For defendants: Exhibit B to complainants' bill. 2. Benjamin H. Barnett's testimony. 3. James M. Riley's testimony. 4. Cason's receipts.

When the defendants offered as evidence exhibit B to complainants' bill, of the divorce proceedings, the complainants' solicitor objected thereto, insisting it was not binding on complainants, and if upon Emily B. Cason, not upon her as to the amended schedule, she never having been served or ever having appeared and pleaded to the merits of the action.

The court overruled the objection and admitted the evidence.

When the defendants offered the testimony of Riley, objection was made by complainants of proof by him as to sales of negroes made after the separation, which objection was overruled and the testimony admitted.

When complainants offered in rebuttal the testimony of Emily B. Cason, taken by complainants by commission, the same was refused to be admitted, it being insisted on to show why no defense was set up by her to the divorce suit, and the incorrectness of the valuation of the property in the amended schedule, and being specially insisted on as competent under the scaling ordinance of November 8th, 1865.

When the evidence was closed, counsel for complainants presented certain issues of fact to be passed upon by the

jury, when the court struck out the following, and refused to allow these to be passed on, viz :

Did Adams' first wife know of the statement of value put by him on the property at the time of the divorce ?

Did the decree of divorce divide the property received by Adams for his first wife and her children, and if so, what portion of it was allowed to be retained by Adams?

What means, if any, did Adams have when he married his first wife, and how did he accumulate the property he died possessed of ?

The court at the same time added the following words to the first question submitted to the jury, namely : "What amount of incumbrance rested on it at the time ?" which addition gave the benefit to F. W. Adams' estate of the part of his wife's debts out of the *corpus* of the property to the amount of nine hundred dollars, as set out in the schedule.

After this the court charged the jury, of its own accord, that the record of the divorce judgment and schedule annexed was binding on complainants as *prima facie* evidence, and the burden was on them to overcome it by positive testimony that it was untrue.

The following questions were then submitted to the jury, who returned the verdict thereon as follows :

"1. What amount of money and what property was received by F. W. Adams for his first wife and her children, from the estate of W. H. Barnett, and what amount of incumbrance rested on it which he had to pay?

"Three thousand five hundred 45-100 dollars in money, and eight negroes valued at five thousand one hundred and seventy-five dollars. Nine hundred dollars.

"2. What amount of property was sold by F. W. Adams of that so received by him, and when and in what currency, with the value thereof?

"Three negroes. In September, and later, during the year 1862. They were sold for three thousand seven hundred and sixty-two 50-100 dollars in Confederate money, valued at thirteen hundred and forty 83-100 dollars in gold.

"3. What portion of the property reecived by F. W. Adams for his first wife and her children was accounted for by him at the time of the divorce, and what portion was not accounted for?

"He has accounted for seven negroes and thirty-four hundred dollars in money. He has not accounted for one negro and one hundred 45-100 dollars in money.

"4. What portion of the property of Adams' first wife and children was invested in the Georgia Railroad stock sued for?

"None to our knowledge.

"5. What amount of the property or money received by Adams for his first wife and children was in his hands not accounted for, according to the laws of Georgia, at the time of his death?

"Fourteen hundred and forty-one 28-100 dollars.

"We, the jury, find for the plaintiffs in the sum of fourteen hundred and forty-one 28-100 dollars ($1,441 28-100), with interest from date of divorce. And we find that this amount, together with the twenty-five hundred dollars now in the hands of Mr. Benjamin H. Barnett, trustee, be held for the use of Mrs. Emily B. Cason and children during her life, and at her death to be distributed among the children.

Wm. J. Goodrich, <em>Foreman.</em>"

Upon this being returned into court, the defendants moved the court for a rule against complainants to show cause why the finding number 5 and the following part of finding number 3, to-wit: "He has not accounted for one negro and one hundred 45-100 dollars," and the general verdict returned by the jury, should not be set aside, and a new trial granted on the following grounds, to-wit:

1. Because the jury had no authority, under the act of February 23, 1876, to return a general verdict.

2. Because said part of finding numbered 3, to-wit: "He has not accounted for one negro and one hundred 45-100 dollars," and all of finding numbered "5" are con-

trary to the evidence, and strongly and decidedly against the weight of evidence.

3. Because said finding and part of finding are contrary to the charge given by the court, in substance, as follows: That the verdict and decree of Oglethorpe superior court were presumptive evidence of the settlement of all rights as to the trust estate of Mrs. Cason, and such presumption stands until overcome by proof.

4. Because the court has failed to hold that said verdict and decree in Oglethorpe superior court were a complete bar to this suit.

The judge held up the motion until July 18, 1878, when it was overruled on all the grounds by order, as follows:

"Upon consideration of the motion for new trial and the cause shown, the grounds of each of which are hereby verified as correct, it is ordered and decreed that the motion for new trial be and it is hereby overruled upon each and every ground stated therein. It is further ordered that the decree this day entered upon the facts found by the jury be enforced, unless excepted to within thirty days from this date, each party to have the right in assigning error to include all rulings of the court pending the trial, as well as in overruling the said motion, or to the terms of the decree.

WM. GIBSON, *Judge, etc.*"

Upon the passage of said order the court entered a decree based upon the findings of the jury as follows:

"EMILY B. CASON *et al.* ⎫ Bill in Equity.
*vs.* ⎬
THE UNION TRUST COMPANY *et al.* ⎭ April Superior Court.

"I know of no case that has given me more trouble, after a full investigation of all the facts submitted and the findings of the jury, than this.

"To state the case briefly is perhaps necessary to a correct understanding of the judgment herein mentioned under the act of 1876, which should be repealed or amended at as early a day as possible.

"Mr. Barnett left a will, in the third and sixth items of which he be-

queathed to his daughter Emily, one of the complainants, both money and negroes, which will has been decided by the supreme court of Georgia to create a life estate to said daughter with remainder to her children. In 1857, F. W. Adams married said Emily, and received from the executor and guardian of his wife thereafter in cash, thirty-five hundred dollars, according to receipts exhibited, incumbered by a debt of nine hundred dollars, due and accruing at the time of the marriage by his said wife Emily, and several negro slaves. In 1866, in Oglethorpe superior court, F. W. Adams obtained a divorce from said Emily, the ground being abandonment for three years. The writ was served personally, with a schedule of property attached, which before the final trial was amended. Yet no evidence appears that said amended schedule was ever served. The jury giving the final verdict ordered F. W. Adams to pay to his wife, to do as she *pleased* with, twenty-five hundred dollars. This could not have been of the trust estate received by Adams for his wife, as our supreme court had previously decided, that neither he nor she possessed any such estate therein, and no court or jury could change or make the law in relation to titles already fixed. If in 1866 she received this sum and accepted said verdict in lieu of all *claims* she then possessed against her then husband, is and should she not be bound by it, and may not said verdict be fairly interpreted to have been a judicial compromise and settlement of all claims she possessed against her then husband? If so, after ten years has elapsed, can she further assert any claim against her then husband?

"How and why the jury trying the divorce could have gone on and adjusted the rights or interest of minors not parties to the then pending suit, who only had an estate in remainder after the death of their mother, I cannot well understand. Yet it seems it was done, and twenty-five hundred dollars ordered paid over to a trustee for May Adams, excluding therefrom any sisters or brothers that might thereafter be born, directly in conflict with the judicial interpretation of said will, and well known to the learned judge permitting the same, and the able and distinguished counsel conducting said divorce suit.

"Yet the children of Emily B. Cason are only entitled to an estate in remainder, and the jury finding that F. W. Adams had not accounted for fourteen hundred and forty-one 28 100 dollars of the trust fund received by him:

"It is ordered and decreed that his administrator, John M. Walton, do sell the fifty shares of Georgia Railroad stock standing in the name of Flournoy W. Adams, and pay to E. B. Cason, or such other person as she may direct in writing, the sum of fourteen hundred and forty-one 28-100 dollars, with interest from time of said divorce, less two hundred dollars of dividend received by order of court upon said stock, upon said party to whom payment is made giving bond for two thousand dollars, with good security, to the Ordinary of Cobb county, to pay annually to Habersham I. Adams the interest arising from said fund, to

be used by him for the equal and mutual benefit of all of said Flournoy Adams' lawful children, and at the death of the said Emily B. Cason to be paid over to all her children, share and share alike.

"It is further ordered that the estate of Adams do pay the costs of this proceeding and reasonable counsel fees of the administrator, and the trust fund to be paid over to be reduced by the amount of counsel fees of complainants' solicitor herein for recovering the same, said amount to be paid by the administrator to complainants' solicitor.

WM. GIBSON, *Judge, etc.*"

"Filed in office July 16th, 1878.

S. H. CRUMP, *Clerk.*"

Within thirty days from the rendition of the said decree, and at and during the same term of the court which had not adjourned, at which the trial was had, the complainants, by their solicitor, excepted to the said acts and rulings on the trial and the decree as rendered upon the finding of the jury, and assigned error upon the following grounds:

1. Because the court held the decree of divorce, with schedules annexed, as *prima facie* binding on complainants, and that it could only be overcome by positive and conclusive proof.

2. Because the court admitted in evidence for defendants, without qualification, the record in the divorce proceedings, complainants objecting.

3. Because the court admitted the testimony of witness (Riley) as to sales made after the separation between Flournoy W. Adams and his wife, complainants objecting.

4. Because the court refused to admit the testimony of E. B. Cason for any purpose whatsoever.

5. Because the court refused to submit to the jury certain of the issues of fact presented by complainants' solicitor, and added to one, and allowed the *corpus* to be reduced by debts alleged to be due by the wife at the time of the coverture.

6. Because the court charged the jury that the verdict and decree of Oglethorpe superior court were presumptive evidence of the settlement of all rights as to the trust estate of Mrs. Cason, and such presumption stands until rebutted by proof.

7. Because the court, in entering its decree of July 18, 1878, on the verdict of the jury, used the following language:

"Upon said party to whom payment is made giving bond for two thousand dollars, with good security, to the ordinary of Cobb county, to pay annually to Habersham I. Adams, the interest arising from said fund, to be used for equal and mutual benefit of all of said Flournoy Adams' lawful children, and at the death of said Emily B. Cason, to be paid over to all her children, share and share alike."

8. Because the court refused to enter the decree presented by complainants' solicitor in writing, as follows:

"Pursuant to the act of February 23, 1876, directing a written judgment and decree upon the special verdict of facts found upon the issues made by the pleadings and submitted to the jury, the court is of the opinion that under the law applicable to the facts so found, that the complainants do recover of and from John M. Walton, as administrator in Georgia, to be levied of the goods and chattels of Flournoy W. Adams, deceased, in his possession to be administered to-wit: the fifty shares of capital stock in the Georgia Railroad and Banking Company standing in the name of Flournoy W. Adams on their books at the time of his death, the sum of fourteen hundred and forty-one 28-100 dollars, principal, with interest from April 19th, 1866, the date of divorce between Flournoy W. Adams and Emily B. Adams, until paid, with costs of suit, less the sum of two hundred dollars paid under the order of this court December 28th, 1876, which is to be credited on the interest found to be due and payable from April 19th, 1866."

9. Because the court went outside of the issues presented by the pleadings and issues of fact to decree in favor of the children of the second marriage of F. W. Adams, along with May Adams, his child by his first marriage, and divided among them the income of the property received by the first marriage and found by the facts never to have been accounted for in the divorce proceedings.

10. Because the court required bond and security of his own motion from the proposed custodian of the fund, the same not being asked for by any one, and Habersham I. Adams being the testamentary guardian of all the children of F. W. Adams.

The respondents, John M. Walton, administrator, and Habersham I. Adams, testamentary trustee, joined in the foregoing bill of exceptions, and assigned as error the refusal of the court to grant a new trial on each of the following grounds, to-wit:

1. Because the jury had no authority under the act of February 23, 1876, to return a general verdict.

2. Because the fact of finding numbered "3," to-wit: "He has not accounted for one negro and one hundred and forty 45-100 dollars, and all of finding numbered "5" are contrary to the evidence, and strongly and decidedly against the weight of evidence.

3. Because said finding and part of finding are contrary to the charge given by the court, in substance, as follows:

That the verdict and decree of Oglethorpe superior court were presumptive evidence of the settlement of all rights as to the trust estate of Mrs. Cason, and such presumption stands until overcome by proof,

4. Because the court failed to hold that said verdict and decree in Oglethorpe superior court were a complete bar to this suit.

And said respondents also assign as error the judgment of the court in overruling the motion for new trial on all of said grounds, and also the allowance in the decree made by the court of interest on fourteen hundred and forty-one 28-100 dollars.

We think the law is this. In a case proceeding for divorce and the disposition of the property belonging to husband and wife, it is the province of the court and jury to dispose of the property that belongs to the husband, and any estate of the wife, by way of making provision for the wife, child or children. In proceedings for a divorce, the parties

to the proceedings, husband and wife, are *sui juris*, and in a court having jurisdiction of the persons and subject matter, the proceedings and judgments rendered have the same effect, and are as conclusive as judgments in other cases; which principle applied to this case will make the judgment rendered in Oglethorpe superior court, conclusive as to the rights which Mrs. Adams (now Mrs. Cason) has in reference to any provision to which she was entitled out of her husband's property or her own property, and also conclusive upon her as to any provision which was made by the jury, upon the last trial by the second verdict, for the child, May Adams, out of the property of Flournoy W. Adams, or the life estate of Mrs. Cason. We also think that as against the children of Emily B. Cason, the record of the proceedings in the divorce case in Oglethorpe county is evidence of nothing.

The provision which the law permits to be made for a child or children in a divorce case must be made out of the property and estate of the parents, and not the property or estate of the child or children.

By the will of Wm. H. Barnett, two items of which are copied into this opinion, his daughter was entitled to an estate for her life in the property bequeathed to her, with remainder to such child or children as might be born of her body.

Therefore the court in Oglethorpe had the right, so far as that property is concerned, to dispose of her life estate only in said property. That much we think the court had the right to do, and to that extent only the judgment is conclusive; further than that it proves nothing.

We do not think there is any force in the objection that Mrs. Cason was never served with the amended schedule. She had been served personally with the libel for divorce and a schedule of the property of the parties, and it was competent to amend the schedule annexed before the trial to show the then existing status of the property and estate of the parties. But this schedule for obvious reasons cannot affect the other complainants.

We do not think there was any valid objection to the testimony of Riley. Mrs. Cason having no interest in the matter, is a competent witness for complainants' to prove anything that is proper to be proved, but not to prove anything against the decree in Oglethorpe county, or to prove any contract or anything that occurred between herself and husband. The estate of Flournoy W. Adams is liable to the complainants for the *corpus* of the estate which came into his hands from the executor of Wm. H. Barnett, or the guardian of his former wife Emily Barnett, at the death of Mrs. Cason. Her life estate in the property having been disposed of by the decree in the divorce case in Oglethorpe, the proper inquiry is, what is the amount of the estate received by Flournoy W. Adams by virtue of his intermarriage with Emily Barnett under the will of Wm. H. Barnett, and how has he accounted for it? and for the amount unaccounted for, his estate will be responsible to the children of Emily Cason at her death, without interest during her life. She would have been entitled to that, if it was not defeated by the decree in the divorce case in Oglethorpe, which it will be perceived we think was done. When the amount which the children of Emily Cason are entitled to recover is ascertained, its present value might be ascertained, and be decreed to be paid now, in order that there could be a present enjoyment of the interest of the fund, and that the administration could be wound up, or payment of the whole sum might be postponed until the death of Mrs. Cason.

It might be supposed that we think the case prematurely brought. We do not; for the fact that Mr. Adams died in New York, and the danger that a foreign administrator might transfer or dispose of the only property in Georgia to answer the just rights of complainants, is a sufficient reason, when considered with reference to the danger to the *corpus*, to give jurisdiction to ascertain now the equitable rights of these parties, looking to the condition of things at the time of filing the bill. If any portion of the *corpus* of the estate has been lost in good faith, or destroyed without

negligence, that would be a sufficient accounting *pro tanto.*

We cannot sustain the verdict in this case, because it makes provision for Mrs. Cason, whose rights we think are concluded, and because it invades the provision made by the decree in the divorce case for May Adams, and divides that $2,500.00 between her and her half brothers and sister, and gives the interest to Mrs. Cason for life.

We cannot sustain the decree made by the judge, because it provides for the payment of the interest on the verdict to the children of Mr. Adams, who are strangers in blood to the ancestor Barnett, from whom the fund came; and for the more conclusive reason, that there is no finding of the jury upon which the decree can be based. There is nothing in the issues made by the pleadings to justify it. Judgment is therefore reversed and a new trial ordered upon the grounds indicated in this opinion.

Judgment reversed.