## BOARD OF DRAINAGE COMMISSIONERS OF SWEET WATER DRAINAGE DISTRICT v. BROWN.

1. A person who with others signed a petition for the establishment of a proposed drainage district, under the drainage act of 1911, which proposed district did not embrace any of his lands, and set opposite his name his acreage that would be benefited by the improvement, was concluded by the final judgment of the drainage court establishing the drainage district, although the district as established embraced some of his lands, and although no notice had been given him of the intention of the viewers or of the drainage court to include his lands in the district as established, other than the fact that the viewers in their preliminary and final reports included some of his lands within the boundaries of the district, and he was duly notified of the times and places when the drainage court would hear and pass upon said reports.

2. Although a petition for the establishment of a drainage district designates the body of lands to be embraced therein, yet where the viewers appointed by the drainage court, to examine and report upon the practicability and benefits of the proposed improvement, recommend in their preliminary report to the drainage court the inclusion in the boundaries of the district of other lands than those described in the petition for the establishment of the district, on the ground that the inclusion of such lands in the district is necessary to render the improvement a success, and on the ground that such lands will be benefited by the improvement, the drainage court, under said drainage act, has jurisdiction to render jugment establishing the district with such other lands embraced therein; and their judgment is not void for lack of such jurisdiction.

3. Where, at a meeting of those interested in the establishment of this drainage district, a brother of the plaintiff and other owners of land on Yellow River were present and let it be known that the owners of lands on said river were opposed to having their lands included in this district, and that certain of these owners were then present at the county site, in obedience to summonses issued by the drainage court calling upon them to show cause why their lands should not be embraced in the district, to oppose before the drainage court their inclusion therein, when the matter was referred to the attorney of the petitioners for the establishment of said drainage district, of whom the plaintiff was one, who then stated to those at said meeting that landowners on said river would not be included in the district, whereupon the chairman of said meeting announced publicly that such landowners were dismissed from the proceeding, which information was afterwards communicated to the plaintiff, who was thereby lulled into inaction and thereby gave no further attention to the proceedings to create said district, and where afterwards the drainage court rendered judgment establishing the district with these lands on Yellow River included therein, it not appearing that the attention of the drainage court was called to what had passed at the above meeting,

and that this court passed no order, nor took any action, looking to the dismissal of these owners from the case, and where thereafter the plaintiff was duly notified that the drainage court would have two separate hearings upon the preliminary and final reports of the board of viewers, these facts did not constitute such fraud as would authorize a court of equity, at the instance of the plaintiff, to treat the judgment of the drainage court as a nullity and to enjoin the enforcement of executions issued against him to enforce assessments to cover the costs of such improvement.

4. Where the maps required to be filed with the reports of the board of viewers, under the drainage act of 1911, were actually deposited with the clerk of the superior court, his failure to make thereon entries of filing, and to mark thereon office copies, and to paste on or attach to his record book copies, will not render void the judgment of the drainage court. Such failure subjects the clerk to fine (Civil Code of 1910, § 4894), but his inattention to this duty does not render invalid the judgment of the drainage court creating the district. *Cribb* v. *State,* 118 *Ga.* 316, 318 (45 S. E. 396).

5. After the judgment establishing the drainage district has been rendered, it is too late for the plaintiff to show that his lands therein embraced have not been benefited by the improvement.

6. It was not necessary for the drainage court to pass an order making the plaintiff a party to the proceeding to establish this district, ne being one of the petitioners for its establishment; and this is so notwithstanding the fact that said court had passed an order reciting that he had not signed the petition for its creation, and calling upon him to show cause why he should not be made a party.

7 (4). The fact, that the plaintiff signed the petition for the creation of this district only after being assured that he would not be affected thereby, and that his signing thereof would be an accommodation to the other petitioners, as it would aid them in securing its establishment, does not relieve him from the consequences of the judgment establishing said district.

8. Nor was the judgment of the drainage court void because in the proceedings Yellow River was treated as a tributary of Sweet Water Creek, when in fact the latter stream was a tributary of the former.

9. The court below erred in granting an interlocutory injunction.

No. 3357. APRIL 11, 1923.

Injunction. Before Judge Fortson. Gwinnett superior court. July 13, 1922.

Certain persons, including D. P. Brown, the plaintiff, filed a petition for the establishment of a drainage district under the drainage act of 1911. The petition described the body of land which the petitioners wished to be incorporated into a drainage district as " All that tract or body of land lying and being on Street Water Creek, and Jackson's Creek, and Beaver Ruin Creek, tributaries to said Sweet Water Creek," in Gwinnett County, com-

posed of parts of certain named lots in the seventh land district
of said county, certain named lots in the sixth land district of said
county, all on Sweet Water Creek, parts of certain named lots
on Jackson's Creek, certain named lots on Beaver Ruin Creek,
and parts of certain named lots on North Beaver Ruin Creek, con-
taining in the aggregate 2000 acres. The plaintiff owns none of
the lands embraced in these land lots. The lands in the proposed
drainage district are owned by 78 persons whose names are set
out, with the number of acres owned by each. Among these names
is that of plaintiff, and opposite his name his acreage is given
as 40 acres. The petition further alleges " that the proposed im-
provement is to begin on Sweet Water Creek at Singleton's bridge
on the Lawrenceville and Duluth public road on the lands of
Seaf Singleton, and to thence go down Sweet Water Creek to
where it empties into Yellow River, a distance of about eight and
one half miles. The improvement then to begin at the mouth of
Beaver Ruin Creek where it enters into Sweet Water Creek, run
up said Beaver Ruin Creek to lands of John D. Cain, a distance
of about three miles from the mouth of said creek; thence
to begin at the mouth of North Beaver Ruin where it enters into
Beaver Ruin Creek, and thence up said North Beaver Ruin Creek
a distance of about one and one half miles from its mouth to the
L. M. Nash bridge. Then to begin at the mouth of Jackson's Creek
where it enters into Sweet Water Creek and running up said
Jackson's Creek a distance of about four miles from its mouth
to what is known as McDaniel's bridge. The exact location of
said proposed drain or improvement on all said streams to be
located by a survey through said above-described lands and along
said watercourses. This petition was signed by 45 landowners
named therein, and the plaintiff was one of these signers, which
he denied in his petition, but admitted in his testimony.

   On Jan. 3, 1916, the drainage court passed an order reciting
that certain named owners of land in the proposed drainage dis-
trict had not signed the petition for its establishment, and di-
recting that they show cause at the next court of the board of com-
missioners of roads and revenues of said county, on the first Mon-
day in March, 1916, if any they could, why said court should not
proceed to establish said drainage district as prayed for. Plain-
tiff alleged that he was not served with said order, or given notice

thereof. On July 3, 1916, the viewers appointed by the drainage court made their preliminary report, in which they stated that they had "proceeded to examine the land described in said petition and other land, where necessary, to locate properly such improvement or improvements as are petitioned for along the route described in the petition," and that they "had surveys made such as were necessary to determine the boundaries . . of the district" as is provided by section 3 of the drainage act. They reported in favor of the project. They filed with their report a map showing the lands to be benefited and included in the proposed drainage district. This map embraced the land of plaintiff. They further reported "that the proposed improvement will begin just a short distance below where Sweet Water empties into Yellow River." They further found "that about two miles beyond said proposed canal on Yellow River is located what is known as Simmons' Mill dam," which "caused water to back up said stream, and has caused a great deal of the wet, overflowed condition of the property included in said proposed drainage district," and that the removal of said dam would greatly benefit the lands included in said proposed district. They further reported that, in order for the proposed drainage district to be a complete success, this dam should be removed, and recommended that this dam be purchased by the proposed district, or condemned if it could not be purchased. The drainage court fixed a day for the hearing on this report, and the notices of this hearing, required by the drainage act, were given to all parties. On August 7, 1916, the drainage court rendered judgment establishing this district. On Dec. 4, 1916, the viewers and engineer filed their final report, which, among other things, contains a classification of the lands on "Yellow River (lateral of Sweet Water)" and their owners, embraced in "Sweet Water Drainage District." Among these owners are G. B. Wright, with 31 acres in Class C; W. E. Simmons, with 50 acres in the same class; A. W., Geo. M., D. P. and Oscar Brown, and Mrs. Julia Couey, with 27 acres in the same class; D. P. Brown, the plaintiff, with 1 acre in the same class; W. H. Britt, with 12 acres in the same class and 1 acre in Class E; Mrs. L. B. Greer, and Mrs. Columbus Wilkie, with 40 acres in Class B and 14 acres in Class C; D. P. Brown, plaintiff, with 6 acres in Class B; and D. P. Brown, plaintiff, G. M. Brown and A. W. Brown, with 15 acres in Class B and 10 acres in Class C.

Plaintiff testified that he signed the petition for the establishment of said drainage district merely as an accommodation to the petitioners who resided within the proposed district, without any intention on his part to establish a drainage district which would include owners whose lands were situated on Yellow River. He declined to sign said petition until assured he would not be affected, but his signature would help those affected in getting said district. He did not know his lands were included until an assessment was made and he was notified to pay up or fi. fas. would be issued and levied on his lands. Shortly after the first Monday in March, 1916, he was informed that all parties with lands on Yellow River had been dismissed as parties. He got this information from G. M. Brown, who was present at a hearing had that day, in response to notices served on parties sought to be included in said district. He owns land situated on Yellow River, which is not a tributary of either of the named creeks, they being tributaries of said river. The drainage of said creeks has not benefited and will not benefit his lands on Yellow River, but is rather a damage to said lands, because in many instances ditches on said lands have become filled up to a greater extent since their digging. Shortly after March, 1921, he called at the office of the clerk of Gwinnett County for the records of said drainage district, which were furnished him, and there was not of file in .said office a map of said drainage district nor was one copied in the record. Further search failed to locate any such map.

George M. Brown deposed that during the month of January, 1916, he was served with notice to appear before the commissioners of Sweet Water drainage district, to show cause why he and others having lands situate on Yellow River and not originally included in the proposed drainage district should not be made parties to said proceeding. He and others appeared before said drainage court with intention of filing objections to having their lands included in said district, on the ground that Yellow River was not a tributary of Sweet Water Creek and would not be benefited by said drainage district, and therefore should not be included therein. The people in the proposed Sweet Water District met in a room next to the court-room and organized by electing John R. Cain chairman. Deponent was requested to act as secretary, but declined on the ground that he was on Yellow

River, and was present to protest against being included in Sweet Water Drainage District. L. B. Greer, another whose lands were situated on Yellow River, was spokesman in objecting to Yellow River landowners being included in said district. The chairman referred the matter to the attorney who was present representing Sweet Water Drainage District. This attorney then and there announced that the Yellow River people were not included in the proposed district. Then the chairman announced that the Yellow River people were excused. On his return home, he represented to his brothers (one of whom was the plaintiff) and sisters and others on Yellow River that they were not included and had been dismissed from said proceeding. Thereafter neither he nor any of his relatives were ever notified that their lands on Yellow River had been included in said district, and they gave no further attention to the matter until fi. fas. were issued against them. The digging of said Sweet Water ditch has not benefited and never will in its present state benefit lands on Yellow River.

The defendants introduced the judgment of the drainage court, rendered Aug. 7, 1916, establishing the Sweet Water drainage district. It recited that it appeared to the court that notice had been given by publication for two consecutive weeks in the *News-Herald,* a newspaper of general circulation, published in said county, as·required by law; that notice had been given by posting notices at the court-house door and at five conspicuous places in the proposed district, to the effect that on this day the court would consider and pass upon the report of the viewers; and that all non-resident landowners had been duly notified by mail, and that the clerk of the superior court of said county had sent notices to them as required by law, at least thirty days before the rendition of said judgment, notices having been mailed on July 3, 1916, posted on the lands on July 6, 1916, and posted at the court-house door on July 3, 1916, and the notice published in said newspaper more than fifteen days before rendition of said judgment. The judgment further recites that no objections were filed to the report of the viewers, that all lands affected are included in said district, and none are included that would not be affected or should not be included therein, and that from the evidence said drainage district should be established and should include the lands set out in the viewers' report. By said judgment said district as set

out in the report of the viewers and surveyor, to be known as "Sweet Water Drainage District," for the purposes set out in the drainage act of 1911, was declared established.

The defendants introduced the final report of the viewers, dated Dec. 4, 1916, with a map showing the boundaries of said drainage district, the lands included therein, and the owner of each tract and his acreage. This report showed that the land of plaintiff was embraced in said drainage district as established. The defendants introduced the judgment of the drainage court of Jan. 1, 1917, confirming the final report of the viewers. This judgment recited that all notices required by law were given, that no objections were filed thereto, that the court had carefully reviewed said report, and in its opinion the cost of said project was not greater than the benefits to be derived therefrom by landowners affected.

F. B. Maddox, for defendant, testified that he was formerly for eight years clerk of the superior court of said county, and when said drainage district was originated. He identified the map of said district which was filed in his office when said district was originated. It remained there while he was clerk and was there when he retired, Jan. 1, 1921. He did not record it or attach it to the drainage record, because it was too bunglesome. He merely filed it with the papers in the vault. He heard it could not be found, and went to the clerk's office and found the papers with the map.— The defendants introduced this map, and the proceedings to validate bonds of Sweet Water Drainage District, which were regular in all respects. There was evidence tending to establish the fact that the lands on Yellow River in said district had been benefited thereby.

The plaintiff in his petition against the board of drainage commissioners of said district, to enjoin fi. fas. issued against him upon assessments to cover the cost of this improvement, alleged that the judgment of the drainage court establishing said district was void, because; (1) it did not have jurisdiction over any land not situated on Sweet Water, Jackson's or Beaver Ruin Creek up to the first Monday in March, 1916, and embraced in the petition for the establishment of said district; (2) the board of viewers did not file with their report or have recorded in the drainage book any map of the lands in said district; (3) no

order was adopted by the drainage court so changing the boundaries of said district as to include any lands situate on Yellow River; (4) there was no order making petitioner a party plaintiff or defendant, or, if so, no summons was served on him or other notice given as required by section 6 of the act of Aug. 19, 1911; (5) the judgment establishing said district was obtained by fraud perpetrated upon him; (6) Sweet Water Creek is a tributary of said river, which is much longer and larger than said creek. The court granted an interlocutory injunction as prayed; and the defendants assigned error on this judgment.

*I. L. Oakes* and *R. N. Holt,* for plaintiffs in error.

*W. E. Simmons* and *N. L. Hutchins,* contra.

HINES, J. (After stating the foregoing facts.)

1. The plaintiff asserts that the drainage court which established Sweet Water drainage district did not have jurisdiction of any lands which are not situated on Beaver Ruin Creek, Sweet Water Creek, and Jackson's Creek, up to and including the first Monday in March, 1916; and that any order it may have granted affecting lands owned by him, located outside the district described and on another and larger stream, is absolutely void. The alleged invalidity of such order is based upon the grounds (1) that the drainage court had no jurisdiction of lands not situated upon the named creeks up to the first Monday in March, 1916; and (2) that it affected lands of plaintiff located outside of the district described and on another and larger stream. These grounds are without merit. It is true that the body of lands described in the petition, and sought to be embodied in the drainage district, did not embrace any lands of plaintiff, nor any lands located on Yellow River; but these facts do not render invalid and void the final judgment of the drainage court establishing the district, which, in its final shape and with its final boundaries, takes in the lands of the plaintiff and of others located on Yellow River. The district proposed and the district established may have different boundaries. Land in the proposed district may be left out of the district as it is finally created. Lands embraced in the petition for its creation may be eliminated, and other lands not designated therein may be put in the district in its final shape and form. The drainage act expressly declares that "The board of viewers shall proceed to examine the land described in said peti-

tion, and other land if necessary to locate properly such improvement or improvements as are petitioned for along the route described in the petition, or any other route answering the same purpose if found more practicable or feasible, and may make surveys such as may be necessary to determine the boundaries and elevation of the several parts of the districts." They are further required to report " whether or not all the lands that are benefited are included in the proposed drainage district." Acts 1911, pp. 108, 110; Park's Code, § 439 (c). This law plainly contemplates that lands, not in the body of lands described in the petition for establishment of a drainage district, may be embraced in the drainage district as finally created by the judgment of the drainage court, which is authorized to determine and fix the boundaries of the district. Park's Code, § 439 (f); Acts 1911, pp. 108, 112.

So in this case the viewers reported that other lands not included in the proposed drainage district and including those of plaintiff and others located on Yellow River would be benefited by the improvement proposed. They made a map of the drainage district thus enlarged, which showed these other lands, including that of the plaintiff, located on Yellow River as embraced therein. Thus the drainage court acquired jurisdiction of these other lands. The court then fixed a day when this report of the viewers would be further heard and considered; and the notices of this hearing were duly published and given as required by the drainage act. Acts 1911, pp. 108, 111, 112; Park's Code, §§ 439 (d), (e). No objections were filed by the plaintiff to this report, nor to the inclusion of his lands on Yellow River in the district as finally established. He became thus bound by the judgment establishing this drainage district. *Almand* v. *Board of Drainage Commissioners,* 147 *Ga.* 533 (94 S. E. 1028). This judgment of the drainage court is not void for lack of jurisdiction over these added lands, nor from the fact that these lands are located on a larger and longer stream.

2. On Jan. 3, 1916, the drainage court passed an order which recited that plaintiff and others owning land in said drainage district had not signed the petition for its establishment, and which directed these parties to appear before said court on the first Monday in March, 1916, to answer the petitioners' complaint, or

in default thereof the court would proceed as to justice should appear. Plaintiff alleges that he was not served with a copy of said order, and had no notice thereof. For this reason, he says he is not bound by the judgment of the drainage court establishing this drainage district. This position is not well taken. Plaintiff was, one of the petitioners for the establishment of the proposed drainage district. He and his copetitioners instituted the proceedings for its creation. They put the ball in motion. He was bound to know that the drainage court might not create the district which they sought to have established, but on the contrary might add lands to or take lands from the proposed district. It was his duty to follow up and watch the proceedings, and see that no action was taken which might prejudice him. Filing of the petition brought the plaintiff into court, and no notice to him of any subsequent action in the case was necessary to bind him by the judgment in this proceeding. *Miller* v. *Georgia Railroad Bank,* 120 *Ga.* 17 (47 S. E. 525).

3. The plaintiff further attacks the judgment establishing this drainage district, upon the ground that the same was obtained by fraud. The drainage court passed an order calling upon certain parties to show cause on the first Monday in March, 1916, why they should not be included in this drainage district. It seems that summonses were served on them for this purpose. Among these parties were G. B. Wright, L. B. Greer, and George M. Brown. On the above date and before the court convened, parties interested in the creation of said district, including its proponents and opponents, held a meeting. George M. Brown and L. B. Greer attended this meeting. Plaintiff was not present. Greer was the spokesman for the owners of lands situated on Yellow River, in objecting to their lands being included in said district. The chairman of the meeting referred this matter to the attorney present and representing the petitioners for said district. This attorney announced that these owners of lands on Yellow River would not be included in the proposed district; and the chairman then announced that the Yellow River people were excused. On his return home, George M. Brown informed plaintiff that landowners on Yellow River were not included in said district, and had been dismissed from the proceeding. Thereafter plaintiff was never notified that his lands on Yellow River had been included

in said district, and gave the matter no further attention until fi. fas. were issued against him for assessments for 1919 and 1920, and levied upon his bottom lands on Yellow River for the cost of said improvement. It does not appear that plaintiff or any other one of these owners brought the matter of the exclusion of landowners on Yellow River to the attention of the drainage court. It does not appear the drainage court took any action in dismissing these landowners from the proceeding for establishing said district. It does not appear that the attention of the court was called to this matter in any way by anybody. We do not think that these facts showed such fraud as renders this judgment void as to the plaintiff. Certainly after the judgment establishing said district, and the issuing of bonds to cover the cost thereof and their due validation by the proper court, the above facts constitute no such fraud as will render the judgment creating said district void as to the plaintiff. Diligence on the part of the plaintiff certainly required that he should have called the attention of the drainage court to this matter, and that a proper order should have been taken striking the Yellow River landowners from the proceeding. Certainly the action of that court on this matter should have been invoked by plaintiff. If the court had passed the necessary order striking them from the proceeding, that would have been the end of the matter. If the drainage court had refused to pass such order, then the plaintiff could have excepted thereto and had the matter reviewed. While fraud authorizes a court of equity to relieve against a judgment obtained by imposition (Civil Code of 1910, § 4629), and while a court of equity will set aside a judgment of a court of competent jurisdiction for fraud, it will only do so when the complainant is free from negligence and fault (§ 5965). The facts of this case do not show that the plaintiff was free from negligence or fault; and for this reason a court of equity will not relieve him against the judgment establishing this drainage district.

4. The plaintiff further sets up that he signed the petition for the establishment of said district only after he was assured that he would not be affected thereby, and that his signing would be an accommodation to his copetitioners and would aid them in securing its establishment. These facts do not furnish sufficient reason why a court of equity will grant the plaintiff relief against

the judgment granted in this case. A litigant will not be permitted to take inconsistent positions in legal proceedings. A party is always bound by a ruling which he invoked, and by a judgment in his favor which he procured or aided in procuring. *Butler* v. *Tifton &c. R. Co.*, 121 *Ga.* 817 (49 S. E. 763). He can not now make a contention which is inconsistent with the position taken by him in the petition brought to establish this district. He will not now be heard, especially after the rights of third persons have intervened, to say that he did not intend what he asked as one of the petitioners who brought the proceeding to create this district. The law charges him with knowledge of the fact that one who handles judicial fire may be burnt.

5. The plaintiff alleges that his lands on Yellow River have not been benefited by this improvement, but on the contrary have been injured thereby. This was a matter of defense before the drainage court (Acts 1911, pp. 108, 112; Park's Code, § 439 (f)), and of appeal from a judgment adverse to plaintiff (Acts 1911, pp. 108, 114; Park's Code, § 439 (h)). It is too late to make this defense after judgment has been rendered by the drainage court establishing the district. *Almand* v. *Board of Drainage Commissioners*, supra.

6. The rulings in the other headnotes do not require elaboration.

7. So we reach the conclusion that the plaintiff did not make a case, under his pleading and proofs, which would authorize the court to grant the injunction prayed for by him; and that the court below erred in granting an interlocutory injunction.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J. I concur in the judgment of reversal solely upon the ground that the plaintiff in error was one of the original petitioners for the creation of the drainage district.