### GREER et al. v. POPE et al.

1. Courts of equity (or, in this State, a court exercising equitable jurisdiction) will not generally undertake to enforce the specific performance of a contract for personal services which are material or mechanical in character.

2. Courts of equity will not decree specific performance of contracts for personal services involving the exercise of skill, judgment, and discretion, continuous in their character, and running through a period of ninety-nine years, thus requiring the protracted supervision of the court.

3. Where the owners of a telephone exchange and certain lines of poles and wires sold or leased for a term of ninety-nine years a particular line, with ten telephones, and the wires, poles, etc., connected therewith, and agreed that for the period mentioned the parties to whom the conveyance was made, and their heirs and assigns, should be accorded, without fee

or charge, full connection with the exchange, and upon all lines in the county then owned and operated by the parties making the covenant, and this privilege and right was declared to be binding upon the assigns and heirs of such covenantors, so that it should be operative against all purchasers holding under them, such agreement was not one in the nature of an easement, or one running with land, and did not bind a company which purchased the exchange and its connecting lines and property appurtenant thereto from a corporation to which they had been transferred by the covenantors.

4. As to the corporation which was alleged to have been formed by the covenantors, and in which they "incorporated their telephone interests," there was sufficient evidence to submit to the jury the question of whether such corporation assumed or became bound by the covenant, and liable in damages for its breach.

5. There being evidence to show that the covenantors conveyed the telephone exchange and property connected therewith and placed it beyond their power to carry out the covenant above recited, and that those holding by purchase under them refused to do so, there was enough to submit the case to the jury for the purpose of determining whether the covenantors were liable in damages in lieu of specific performance,

OCTOBER 15, 1913.

Equitable petition. Before Judge James B. Park. Jasper superior court. August 29, 1912.

Greer and others filed their petition against C. H. Pope and C. H. Ballard Jr., the Monticello Telephone Company, and the Southern Bell Telephone and Telegraph Company. It was alleged that on April 4, 1906, Pope and Ballard entered into a contract with Greer and others, by which, in consideration of $275, the former transferred and conveyed to the latter, their heirs and assigns, a certain telephone line known as the "Winfred Line," extending from Monticello to Pittman's Ferry, together with ten telephones, wires, poles, franchises, permits, etc., "to have and to hold the same for and during the period of 99 years from the date of this indenture." The contract contained the following covenant: "It is further agreed that for the period aforesaid parties of the second part, their heirs and assigns, shall have and be accorded, without fee or charge, full connection with the Monticello Exchange, and upon all lines of the County of Jasper now owned and operated by the said C. H. Ballard Jr. and C. H. Pope; and this privilege and right is hereby declared as binding upon the assigns and heirs of the parties of the first part, so that the same shall be operated against all persons holding under them; and the parties of the first part, their heirs and assigns, shall have the same privileges and rights for the same period upon the line hereby con-

veyed and transferred, which shall also be binding upon all persons holding under said parties of the second part." There were other terms which it is unnecessary to state. The plaintiffs, some of whom were the original purchasers, and some of whom claimed under original purchasers, sought to obtain specific performance, or in the alternative to recover damages from the defendants for an alleged breach of the contract. It was alleged that Pope and Ballard "incorporated their telephone interests" into the Monticello Telephone Company, and that subsequently that company sold and transferred its property to the Southern Bell Telephone and Telegraph Company, which took with notice of the contract between Pope and Ballard and the plaintiffs or their predecessors. The other material facts are stated in the opinion. On the trial, at the close of the plaintiffs' evidence, the court granted a nonsuit, and the plaintiffs excepted.

*W. S. Florence,* for plaintiffs.

*Greene F. Johnson* and *A. S. Thurman,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. The rule that specific performance of a contract (if within the power of a party) will be generally decreed, whenever the damages recoverable at law will not be an adequate compensation for the non-performance (Civil Code (1910), § 4633), is a statement of a general rule, but is not absolute and without exception. The codification of the general rule does not change this fact. Indeed the expression that under such circumstances specific performance will "be decreed, generally," recognizes the existence of circumstances under which it will not be decreed. In 6 Pomeroy's Equity Jurisprudence (3d ed.), § 757, is quoted a rule established by courts of equity as to certain cases in which specific performance will not be decreed, as follows: "Although the contract is valid, and the defendant is able to do what he has undertaken to do, if, through the want of appropriate means and instrumentalities, the court is unable, while pursuing its ordinary modes of administering justice, either to render a decree or to enforce the decree when made, then the remedy will be refused." Among the illustrations given by the author of the second class of cases mentioned are contracts for personal services, and those the performance of which would be continuous, and would require protracted supervision and direction. §§ 759, 760.

In Roquemore & Hall v. Mitchell, 167 Ala. 475 (52 So. 423, 140 Am. St. R. 52), Mayfield, J., states the rule thus: "Courts of equity will not undertake to enforce the specific performance of a contract for personal services which are material or mechanical, and not peculiar or individual; but where the contract stipulates for special, unique, or extraordinary services, or where the services to be rendered are purely intellectual and individual in their character, the courts will grant an injunction in aid of specific performance. . . Courts of equity will decline jurisdiction to decree specific performance of contracts for personal services involving the exercise of special skill, judgment, and discretion, continuous in their nature, and running through an indefinite period of time." We will not enter into a discussion of the various contracts which have been held to be or not to be appropriate subjects for specific performance, or the modern exception which has been made in regard to railroad operating contracts, or the granting of an injunction to restrain the breach of negative provisions in a contract, or the like. The present case does not involve any of such matters. In regard to the general rule and the exceptions, see Standard Fashion Co. v. Siegel-Cooper Co.; 157 N. Y. 60 (51 N. E. 408, 43 L. R. A. 854, 68 Am. St. R. 749, 753, and the full note thereto); Electric Lighting Co. v. Mobile &c. Ry. Co., 109 Ala. 190 (19 So. 721, 55 Am. St. R. 927, and note); Roquemore & Hall v. Mitchell, supra; Western Union Telegraph Co. v. Pennsylvania Co., 129 Fed. 849 (68 L. R. A. 968, 64 C. C. A. 285); Philadelphia Ball Club v. Lajoie, 202 Pa. 210 (51 Atl. 973, 58 L. R. A. 227, 90 Am. St. R. 627); Pomeroy on Contracts, § 303 et seq.

The general equitable rules on this subject have been recognized by this court. Atlanta & West Point R. Co. v. Speer, 32 Ga. 550 (79 Am. D. 305); Willingham v. Hooven, 74 Ga. 233 (58 Am. R. 435); Civil Code (1910), § 5496. Such cases differ widely from those in which a decree is granted to compel specific performance of a contract to convey property, which can be carried out by one decree, and requires no extended supervision by the court, and no compulsory performance of personal services.

Tested by these rules, the remedy by specific performance could not be granted to the plaintiff, for at least two reasons: (1) Because the remedy could not be given by one decree, but would require supervision over the conduct of the defendants during the

whole continuance of the lease or grant, which was for ninety-nine years. The provision in the contract that certain parties (including some of the plaintiffs and certain persons under whom other plaintiffs claimed) should "have and be accorded, without fee or charge, full connection with the Monticello exchange, and all lines of the County of Jasper now owned and operated by the said C. H. Ballard Jr. and C. H. Pope," evidently does not mean to grant a mere right to physically connect wires with poles, but contemplates that the parties granting such privilege will, through themselves or their employees, and by means of appropriate electrical appliances, make connections when required for the use of the telephones of the other contracting parties. It was not the grant of an easement, and cases in which injunctions have been issued to restrain the destruction of an easement, or of a right in the nature of an easement, have no application. The contract contemplated the rendition of services. It was to continue for ninety-nine years. To hold that a court of equity would decree specific performance, and would continue to supervise the rendition of the services for the remainder of the term mentioned, and from time to time determine whether parties complaining were the parties entitled to the services under the contract, whether such services had been accorded without fee or charge, and whether, if connection was made, it was "full connection" with the exchange and upon all the lines owned by the parties named, would impose upon a court undertaking to administer equitable relief an impossible and intolerable burden.

Hitherto the case of Jarndyce v. Jarndyce, as reported by Dickens in Bleak House, has been considered as the typical illustration of the protracted exercise of jurisdiction over a case by a court of chancery. But if the superior court, in the exercise of its equitable power, should undertake to decree the specific performance, for nearly a century, of the contract under consideration, and to supervise its proper execution during that time, the celebrated case mentioned would cease to occupy its bad pre-eminence.

The contract provides for the performance of certain personal services which are material and mechanical, and not peculiar or individual in character, and it is sought to compel specific performance of such services.

3. This was not the sale of property with an easement appur-

tenant or in gross. The agreement on the part of Ballard and Pope was that the other parties to the contract, their heirs and assigns, should have and be accorded, without fee or charge, full connection with the exchange mentioned and with other telephone lines owned and operated by them. As above indicated, this did not mean a mere physical connection, but contemplated the rendition of services and the use of electrical appliances customary for making what is known as a telephone connection. This was a personal covenant, and not a covenant running with the physical property, or following its ownership into the hands of others, even though the purchasers may have taken with notice of the contract. The Southern Bell Telephone & Telegraph Company purchased the exchange and other property from the Monticello Telephone Company. It does not appear that there was any merger of the companies. The evidence does not show that the purchasing company became obligated to the plaintiffs to perform the contract, though there was some evidence to the effect that for two months after the sale to that company it continued to do so, and that it had notice of the contract when it purchased. Unless the Southern Bell Telephone & Telegraph Company assumed to carry out the contract, or became legally bound to do so, it would not be liable. The mere agreement of Pope and Ballard that their personal covenant for services should be binding upon their heirs and assigns would not alone bind a purchaser from them, unless such purchaser bound itself. The Southern Bell Telephone & Telegraph Company neither having been a party to the original agreement nor having become bound thereby, a nonsuit was properly granted as to it. Wallace v. Ann Arbor &c. Railway Co., 121 Mich. 588 (80 N. W. 572).

4. As to the Monticello Telephone Company the evidence is very meagre. It was alleged by the plaintiffs, that, after Pope and Ballard had made the contract with the plaintiffs or those under whom they claimed, they "incorporated their telephone interests in the county of Jasper, and, after incorporating said interests as aforesaid, accepted and transacted business according to the stipulations of said deed chargeable to said C. H. Pope and C. H. Ballard Jr., on the reservations in said deed to petitioners or their assigns." This allegation is admitted in the answer of the defendants. The charter of the company was not introduced in

evidence, nor was the contract by which the corporation took over from Pope and Ballard "their telephone interests" shown. There was evidence to the effect that this company continued to perform the stipulations of the original contract until the sale to the Southern Bell Telephone & Telegraph Company, about September 2, 1909. While it is not very clear whether Pope and Ballard sold their property to the new company, or what were the terms of the contract by which the latter took possession, we think there was enough to authorize the jury to infer that the company assumed the obligations of Pope and Ballard to the plaintiff, and there is no evidence to negative this possible inference. Wallace v. Ann Arbor &c. Ry. Co., supra.

5. The evidence tended to show that Pope and Ballard had agreed that the parties with whom they contracted, and their heirs and assigns, should have and be accorded, free of charge, full connection with the exchange and certain other lines; that the plaintiffs had not been accorded such connection; and that Pope and Ballard and the company which they organized had put it beyond their power to furnish such services, by selling their property to the Southern Bell Telephone. & Telegraph Company. Damages were prayed in case for any reason specific performance could not be granted. We think there was enough in the evidence to require a submission of the case to the jury, in so far as it sought to recover damages against Pope and Ballard and the Monticello Telephone Company. Civil Code (1910), § 4639. It was contended that the allegata and probata did not agree, and that the evidence showed a substantial compliance with the contract. We think there was enough for the jury to pass upon as to whether there was a breach of contract, with damages arising therefrom. It does not follow, in this equitable proceeding, that, if all the plaintiffs may not show the same damage, there can be no recovery, if there has been a breach of the contract. By reason of the court's announcement that it was useless to go further in the introduction of evidence the plaintiffs' counsel did not fully develop his case as to damages.

In accordance with what is said above, the judgment granting a nonsuit is affirmed so far as the Southern Bell Telephone and Telegraph Company is concerned, and is reversed as to Pope and

Ballard and the Monticello Telephone Company, in so far as it is sought to recover damages from them for a breach of the contract.

*Judgment affirmed in part and reversed in part. All the Justices concur.*