29356, 29357. LOUISVILLE & NASHVILLE RAILROAD COMPANY *et al.* v. ATLANTIC COMPANY, and *vice versa.*

DECIDED FEBRUARY 28, 1942.   REHEARING DENIED MARCH 11, 1942.

*Neely, Marshall & Greene, W. Neal Baird,* for plaintiffs in error. *Brandon, Hynds & Tindall,* contra.

SUTTON, J.   Louisville and Nashville Railroad Company and Atlantic Coast Line Railroad Company, as lessees of Georgia Railroad and Banking Company, and Georgia Railroad & Banking Company brought suit against the Atlantic Company seeking to recover on a certain indemnity contract, the petition alleging: The plaintiffs are the lessees and lessor, respectively, of the line of road known as the Georgia Railroad.   The defendant, a corporation, is the successor in title of all the properties formerly held by the Atlantic Ice & Coal Company and through a corporate set-up became liable for all of the obligations of the said predecessor in title, and especially its obligation to the plaintiffs under a certain

lease contract between the predecessor in title and the plaintiffs, dated September 21, 1923, and relating to the installation of a certain private railroad track, under the terms of which the said Atlantic Ice & Coal Company agreed to release, indemnify, and hold harmless the lessees of the Georgia Railroad & Banking Company and the Georgia Railroad & Banking Company "from and against all claims for damages on the part of any person whomsoever for fatal or personal injuries to the lessee [Atlantic Ice & Coal Company] or the lessee's officers, agents, employees, or others, except the agents and employees of the lessor, when said enumerated persons were, at the time so injured, upon or adjacent to said new track [the private track of the Atlantic Ice & Coal Company] in connection with the transaction of or having business with the lessee, and which injuries grow out of the construction or maintenance of said new track, or the operation of locomotives or cars thereover, or over tracks adjacent thereto, when said operation is in or about the business of the lessee." A copy of the said lease was attached to the petition and provided, among other things, in addition to the above-quoted provision, that the agreement was entered into "for the purpose of providing the lessee's plant with better shipping facilities," and that "the lessor shall have the right, at all times, to use said new track in connection with the lessor's general railroad business or serve other persons and industries thereover so long as said user shall not unreasonably interfere with the use of said new track in connection with the business of the lessee, and to extend said new track or connect other tracks thereto for use in the lessor's general railroad business or to serve other persons and industries." On December 28, 1938, at the Decatur, Georgia, plant of the defendant, and upon the track described in the lease contract, one Jessie Gray sustained a fatal injury by being crushed beneath one of the cars situated upon said private side track, which said private side track was at the time of the injury being served by an engine of the plaintiffs herein. On April 12, 1939, Lemma Gray, as the widow of the deceased, brought suit against Georgia Railroad & Banking Company in the city court of Decatur to recover for her husband's death. The Atlantic Company was duly and properly vouched into court. The case came on for trial and resulted in a verdict for the plaintiff in the sum of $3041 and court costs. The defendant's motion for new trial was

overruled, and afterwards a fi. fa. was issued and was paid by the plaintiffs herein. The Atlantic Company made no appearance in the case, but one of its attorneys was present during a portion of the trial. The present suit is brought to recover from the defendant the full amount of principal, interest, and costs by reason of said suit in the city court of Decatur, a copy of which was attached to the petition in the present case.

The defendant filed a general demurrer to the petition and also filed an answer admitting substantially all of the allegations of the petition, but denying liability, and denying that any right to indemnity existed, and setting up that the verdict and judgment obtained in the Gray case were by reason of the negligence of the plaintiffs' herein, and that the indemnity contract here relied upon was against public policy and void, because it sought to avoid liability for the plaintiffs' own negligence.

The plaintiffs demurred generally to the defendant's answer and specially demurred to that portion alleging that the indemnity contract was against public policy and void, the ground of objection being that the allegations were only conclusions of the pleader.

The defendant amended its answer by alleging that it was compelled to sign the indemnity agreement in order to get cars of coal to its plant at a cost that would enable it to conduct its business, and that the construction and maintenance of the spur track was a public service which was owed the defendant by the plaintiffs, and that in operating its train and delivering a car on the defendant's premises at the time of the fatal injury of Jessie Gray the railroad was acting as a common carrier. The plaintiffs renewed their demurrers to the defendant's answer as amended and further specially demurred to the allegations of the amendment last above mentioned as being irrelevant and immaterial and conclusions of the pleader without showing sufficient facts to support the conclusions, the agreement, on the contrary, showing that the operation of trains on the spur track was done as an added convenience to the defendant and not as part of the duty of the plaintiffs as a common carrier. The defendant then amended its answer by alleging that at the time the indemnity contract was entered into the Public Service Commission of Georgia had not promulgated any rule, order, or other direction requiring persons or corporations served by spur tracks or side tracks to enter into any indemnity

agreement like that sued on by the plaintiffs herein, and that there was no legal obligation upon the defendant to make such a contract, but that being a shipper needing the services of the plaintiffs as a common carrier, and in order to have the track available and use the services of the plaintiffs as a common carrier, as it was entitled to, the defendant was compelled to sign a contract containing the indemnity agreement, and if the agreement provides indemnity in favor of the plaintiffs against their own negligence it is contrary to public policy and is void. All demurrers to the answer as amended were renewed.

The court by an order in writing, reciting that the pleadings of the parties made an issue of fact as to whether or not the side track constructed for the defendant was such as was required to be furnished as a service to the public, overruled all of the demurrers, and exceptions pendente lite were filed by both sides. A motion by the plaintiffs to reconsider the order overruling its demurrers was overruled, and the plaintiffs filed exceptions pendente lite.

The plaintiffs then amended their petition by alleging that the lease hereinbefore mentioned, dated September 21, 1923, was by mutual agreement renewed by a written agreement dated May 1, 1934, a copy of which was attached to the amendment and made a part thereof, and that on June 9, 1925, the plaintiffs and the Atlantic Ice & Coal Corporation and the Atlantic Ice & Coal Company entered into an agreement under the terms of which the agreement entered into on September 21, 1923, was cancelled as to Atlantic Ice & Coal Corporation and thereupon became the obligation of the Atlantic Ice & Coal Company, a copy of the agreement being attached to the amendment and made a part thereof. The copy of the side-track renewal agreement recites the fact of the original contract of September 21, 1923, for a term of ten years commencing September 1, 1923, and provides for an extension of ten years, ending August 31, 1943, and further recites the fact of the Atlantic Ice & Coal Company having succeeded to the interest of the Atlantic Ice & Coal Corporation, party to the original side-track agreement. The defendant renewed its demurrers to the petition as amended and also demurred to the last-named amendment on the ground that it set out a new and distinct alleged cause of action on a contract executed in 1934, whereas the original petition sets out an alleged cause of action on a contract executed in

1923. The court overruled the demurrers, and the defendant excepted pendente lite.

Thereafter the defendant amended its answer by setting up that the railroad track in question was not a private track but a public track which was constructed for the benefit of the public.

The case proceeded to trial and resulted in a verdict and judgment for the defendant. The plaintiffs filed a motion for new trial and by amendment added several special grounds. The court overruled the motion. The plaintiffs assign error in their bill of exceptions on the judgment of the court overruling their demurrers to the answer of the defendant as amended, the judgment overruling their motion to reconsider, and the judgment overruling the motion for new trial. By cross-bill of exceptions the defendant assigns error on the judgment of the court overruling its demurrers to the petition as amended.

■ It is desirable to set forth the substance of the defendant's answer as several times amended, and then consider the renewed demurrers of the plaintiffs thereto. The defendant admitted that judgment was obtained in the city court of Decatur as alleged in the plaintiffs' petition, but neither admitted nor denied whether it had been paid off by the plaintiffs. It admitted entering into the indemnity contract set up by the plaintiffs but denied liability and set up (a) that the verdict and judgment obtained in the Gray case were by reason of the negligence of the plaintiffs herein, and that the indemnity contract relied upon was against public policy and void because it sought to avoid liability for the plaintiffs' own negligence; (b) that it was compelled to sign the indemnity agreement in order to get cars of coal to its plant at a cost that would enable it to conduct its business, and that the construction and maintenance of the spur track was a public service which was owed the defendant by the plaintiffs, and that in operating and delivering a car on the defendant's premises at the time of the fatal injury of Jessie Gray the railroad was acting as a common carrier; (c) that at the time the indemnity contract was entered into the Public Service Commission of Georgia had not promulgated any rule, order, or other direction requiring persons or corporations served by spur tracks or side tracks to enter into any indemnity agreement like that sued on by the plaintiffs herein, and that there was no legal obligation upon the defendant to make such a contract, but that

being a shipper needing the services of the plaintiffs as a common carrier and in order to have the track available and use the services of the plaintiffs as a common carrier, as it was entitled to, the defendant was compelled to sign the contract, and if it provides indemnity in favor of the plaintiffs against their own negligence it is contrary to public policy and is void. The plaintiffs renewed their general demurrer to the answer as amended and specially demurred on the grounds that the allegations (a) were only conclusions of the pleader; that the allegations (b) were irrelevant and immaterial and conclusions of the pleader without showing sufficient facts to support the conclusions, the agreement, on the contrary, showing that the operation of trains on the spur track was done as an added convenience to the defendant and not as part of the duty of the plaintiffs as a common carrier.

After the overruling of the plaintiffs' demurrers they filed a motion to reconsider and this was overruled. Exceptions pendente lite were duly filed, and error is assigned on the judgments overruling the plaintiffs' demurrers and their motion to reconsider. The court did not err in overruling the plaintiffs' general demurrer to the defendant's answer as amended. While it admitted the indemnity contract pleaded by the plaintiffs, it did not admit the payment of the judgment obtained in the city court of Decatur, and it denied that any liability existed against it, thus making it incumbent upon the plaintiffs to prove certain allegations of the petition.

■ The court erred, however, in overruling the special demurrers of the plaintiffs. The answer admitted the contract containing, among other things, the provisions set out in the foregoing statement of the pleadings. The allegations in respect to the contract being void and against public policy because it sought to avoid liability for the plaintiffs' own negligence, that the defendant was compelled to sign the agreement in order to get cars of coal to its plant at a cost that would enable it to conduct its business, that the construction and maintenance of the spur track was a public service owed by the plaintiffs to the defendant, that in operating and delivering a car on the defendant's premises at the time of the fatal injury to Jessie Gray the railroad was acting as a common carrier, that it needed the services of the plaintiffs as a common carrier, as it was entitled to, and if the contract provided indemnity against the plaintiffs' own negligence it was contrary to

public policy and void, were all conclusions of the pleader without alleging any facts to support the same. That this is so will appear from the following discussion of legal principles applicable to the status of a railroad in operating its cars upon a private or a public track, and under what circumstances the public policy of this State would be violated in exempting from liability a railroad for its own negligence, in connection with which legal principles and others here applicable, together with the facts shown by the record, a ruling will also be made on the merits of the general grounds of the motion for new trial.

■ The indemnity contract provided: "The lessee [the defendant] does hereby further agree to release, indemnify, and hold harmless the lessor [the Georgia Railroad, under which name the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, as lessees of the Georgia Railroad & Banking Company, operated] and Georgia Railroad & Banking Company from and against all claims for damages on the part of any person whomsoever for fatal or personal injuries to the lessee, or the lessee's officers, agents, employees, or others, except the agents and employees of the lessor, when said enumerated persons were, at the time so injured, upon or adjacent to said new track in connection with the transaction of or having business with the lessee, and which injuries grow out of the construction or maintenance of said new track, or the operation of locomotives or cars thereover, or over tracks adjacent thereto, when said operation is in or about the business of the lessee." It also provided: "For the purpose of providing the lessee's plant with better shipping facilities" the agreement was entered into, etc., and "The lessor shall have the right at all times to use said new track, in connection with the lessor's general railroad business or serve other persons and industries thereover, so long as said user shall not unreasonably interfere with the use of said new track in connection with the business of the lessee, and to extend said new track or connect other tracks thereto for use in the lessor's general railroad business or to serve other persons and industries." It is contended by the defendant that the deceased, Jessie Gray, did not come within the description of those whose injury was contemplated by the contract, in that it designates "the lessee [the defendant] or the lessee's officers, agents, employees, or others, except the agents and employees

of the lessor," it being urged that the deceased could only be one of the "others," exclusive of the agents and employees of the lessor, and that the word "others," properly construed, means those in the same classification of "officers, agents, employees" of the lessor. If this were the only pertinent language in the context the rule that one word shall be given the meaning of its associate might apply, but from the whole provision we think that the word necessarily should be treated as having reference to those who bear some relation to the defendant other than as "officer, agent, or employee," such as, for example, a customer, invitee, licensee, or a person performing a duty as an independent contractor, as otherwise it would have been useless to have inserted the proviso that the person injured must, at the time, be upon or adjacent to the new track "in connection with the transaction of or having business with the lessee." The evidence upon the trial of the case in the city court of Decatur, for the negligent homicide of Jessie Gray, was not before the court in the present suit, but a copy of the petition was attached to the suit of the plaintiffs herein, and the defendant admitted that the suit was filed, verdict and judgment obtained, fi. fa. issued, etc. The petition in that case shows that Gray was, at the time of his injury, employed in unloading a car of coal which was located on the track of the defendant leading from the mainline track to its property. The reasonable inference, therefore, is that Gray was either an employee of the defendant or else unloading the coal for it as an independent contractor, "in connection with the transaction of or having business with the lessee," and thus was within the class whose injury was contemplated under the contract.

The Georgia Railroad & Banking Company, lessor to Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company, operating as the "Georgia Railroad," was sued in the city court of Decatur for the negligent homicide of Jessie Gray by the lessees in operating its train upon a spur track on the premises of the defendant, Atlantic Company. The suit resulted in a verdict and judgment in favor of the widow plaintiff. A fi. fa. based upon the judgment was paid. The liability was, of course, based on the legal principle that a lessor railroad is liable for the negligent acts of a lessee railroad in running its train over the lessor's railway and injuring another. See *Central Railroad & Banking Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66) ; *Georgia Railroad &*

*Banking Co.* v. *Bennefield,* 138 *Ga.* 670 (75 S. E. 981). The Georgia Railroad & Banking Company was a party to the indemnity agreement here involved, and as the suit, as to it, does not seek indemnity for *its* negligence, but for that of its lessees, no question of public policy is material, whether the spur track in question be a public or a private track, and if under the contract here invoked it provides for indemnity as sought the Georgia Railroad & Banking Company is entitled to recover.

To support the claim of the plaintiffs for indemnity the following documents were introduced: Original lease and spur-track agreement of Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company with Atlantic Ice & Coal Corporation, dated September 21, 1923, for a term of 10 years, unless terminated sooner for any of the causes therein specified, with the privilege of the lessee to renew for an additional term of 10 years or to terminate the agreement at any time by giving the lessors 60 days written notice of its desire to do so, and providing that the lessors shall be indemnified as hereinbefore set out and that "in the event this agreement is in effect at the termination of the lease now in effect between Georgia Railroad & Banking Company and the lessor herein, then at the option of Georgia Railroad & Banking Company the provisions of this agreement shall inure to the benefit of Georgia Railroad & Banking Company in the same manner as if Georgia Railroad & Banking Company had originally been the lessor herein." An agreement between Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company with Atlantic Ice & Coal Company, dated June 9, 1925, under the terms of which the aforesaid contract was cancelled as to Atlantic Ice & Coal Corporation and became the obligation of Atlantic Ice & Coal Company. A renewal agreement of Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company with Atlantic Ice & Coal Company, dated May 1, 1934, extending the lease and spur-track agreement from September 1, 1933, through August 31, 1943. Fi. fa. dated November 30, 1939, from the city court of Decatur in favor of Lemma Gray for $3041, interest, and cost of court, based on a judgment rendered in said court on September 29, 1939, in her favor against Georgia Railroad & Banking Company, on which a receipt was entered for payment made December 5, 1939. An agreement dated April 24, 1931, between

Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company with Atlantic Ice & Coal Company wherein certain property of the railroads adjacent to the property of the Atlantic Ice & Coal Company was leased to the latter for one year, beginning April 1, 1931, with the right of the lessee to remain in possession of the property from year to year after March 31, 1932, upon paying a stipulated rental, but providing that either the lessor or the lessee was privileged to cancel the agreement at any time by giving to the other written notice of such desire.

Whether or not the plaintiffs were entitled to indemnity depends on the answers to the following pertinent questions, in addition to the one we have answered as to whether or not the deceased Gray was one whose injury was contemplated by the agreement: (a) Did the contract contemplate indemnity for the plaintiffs' negligence? (b) If so, is the agreement against public policy? Taking up question (a), the answer must be made in the affirmative. The indemnity provision is without ambiguity. It plainly provides for indemnity against any claim for personal injuries to certain persons when upon or adjacent to the new track or spur-track in connection with the transaction of or having business with the lessee where the injury grows out of the operation of locomotives or cars thereover, or over tracks adjacent thereto, when said business is in or about the business of the lessee. From the suit filed in the city court of Decatur, resulting in the judgment in favor of his widow, Gray, it appears, was fatally injured by the negligent operation of a locomotive or car upon the spur track while he was unloading a car of coal. The contract contemplates only the operation, on the defendant's spur track, of locomotives or cars by the plaintiffs, and, consequently, the negligence to be indemnified against was that of such railroad companies. If they were not to be indemnified for their negligence, it was an idle ceremony in using the words "or the operation of locomotives or cars thereover" in addition to the words (which injuries grow out of) "either the construction or the maintenance of said new track." Unless this view be correct, the contractual provision as to indemnity would be a useless gesture, because in their relationship with the defendant no other kind of claim than one based on their negligence could be brought against them which they could be indemnified against. See in this connection Cacey v. Virginian Railway Co., 85 Fed. 2d,

976; Houston & T. C. R. Co. *v.* Diamond Press Brick Co., 111 Tex. 18 (222 S. W. 204).

Having concluded that the contract contemplated indemnity for the negligence of the plaintiffs, our next inquiry becomes: Is such agreement contrary to public policy? It is pertinent to note the distinction between cases involving indemnity where a railroad company is performing a service to the public as a common carrier and where it is acting only in a private capacity, that is, in an undertaking which it is not required by the law to render. Generally speaking, an agreement to indemnify a party against his own negligence is not void as against public policy. The rule is stated in 31 C. J. 425, § 16: "A contract whereby the indemnitee is saved harmless from the consequences of the negligence of the indemnitor or his agents is not illegal and void, as being against public policy. And while as a general rule a person can not enter into a contract which has the effect of exempting him from all liability for the results of his negligence, it is not contrary to public policy for an indemnitee to contract with another to save him harmless from liability, for the results of the indemnitee's negligence, or that of his employees, to a third person, since this does not prevent him from being liable to such third person. Thus it is not against public policy to indemnify a common carrier of passengers against loss occurring from injuries to passengers, which result from its negligence or the negligence of its servants, or to indemnify a railroad company against liability for injury caused by its negligence to persons on its track by permission." See also Hartford Fire Insurance Co. *v.* Chicago &c. Ry. Co., 175 U. S. 91 (20 Sup. Ct. 33, 44 L. ed. 84). An exception to the general rule exists where a railroad company seeks to contract against its own negligence while performing a service which its duty as a common carrier requires. For example, it was held in *Central of Ga. Railway Co.* v. *Lippman,* 110 *Ga.* 665 (3) (36 S. E. 202, 50 L. R. A. 673): "A carrier who receives a passenger on one of its freight trains is bound by the same standard of diligence as if the passenger were being transported on a regular passenger train. . . An express contract entered into by the carrier and the passenger, under the terms of which the carrier is released from all liability to the passenger for personal injuries received while a passenger on such freight train, is in effect a contract by which the carrier undertakes

to relieve itself from the consequences of the negligence of itself and servants, and can not be enforced." See also *Berry* v. *Cooper*, 28 *Ga.* 543. But where a railroad undertakes to contract for indemnity against its negligence, not criminal in its nature, when rendering a service which it is not required by law to render to the public in its capacity as a common carrier, such a contract is not against public policy and is enforceable. *Hearn* v. *Central of Georgia Ry. Co.*, 22 *Ga. App.* 1 (95 S. E. 368); *New* v. *Southern Railway Co.*, 116 *Ga.* 147 (42 S. E. 391, 59 L. R. A. 115); *Blitch* v. *Central of Ga. Ry. Co.*, 122 *Ga.* 711 (50 S. E. 945); *Cato* v. *Southern Railway Co.*, 151 *Ga.* 308 (106 S. E. 272).

This brings us to a consideration of whether or not the plaintiffs were seeking to indemnify themselves against their negligence in the performance of a service which was owed the defendant as a common carrier, and to determine that it is necessary to determine whether or not the spur-track was a public or private one, the specific question which the record shows the trial judge referred to the jury as controlling and which the verdict of the jury shows to have been erroneously resolved. It is conceded by the defendant that this track was not placed on the premises in pursuance of any order of the Public Service Commission under the authority vested in it by Code § 93-308, but it is contended that it was placed as a public duty of the plaintiffs as a common carrier. Whether or not a track is a public track or a private track is to be measured by the test announced as the general rule in *Harrold* v. *Americus*, 142 *Ga.* 686, 689 (83 S. E. 534), reaffirmed by *Railroad Commission* v. *L. & N. R. Co.*, 148 *Ga.* 442, 445 (96 S. E. 855): "If the track is to be open to the public, to be used upon equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission but as of right, and if the track is subject to governmental control, under general laws, as are the main lines of a railroad, then the use is a public one."

The spur-track here involved was not entirely on the railroad right of way, but, as shown by a map introduced in evidence, extended for a distance of 195 feet on the premises of the defendant. It was upon this portion that Jessie Gray was fatally injured while unloading a car of coal. The defendant paid for, maintained, and was obliged to maintain such portion of the track. The contract

nowhere provided for its use by another as a matter of right, and none other used it. The railroad had no right of way over it. A gate, controlled by the defendant's manager and in practice kept locked, blocked any uninvited use. There had been some use of a similar track near by the course of the present track, but the evidence shows no attempt to assert a right of use to the one here involved. After this track was installed the defendant acquired control of additional track by leasing a part of the railroad right of way adjacent to its premises. A wire fence surrounded the leased portion and connected with the gate. There was no evidence that the defendant was without shipping or loading facilities previously to the construction of the spur track, though it manifestly provided what the contract referred to as "better shipping facilities." No effort appears to have been made to have the Public Service Commission require the installation of such a track for public service. It could have done so only if the track was to be a public track. To acquire the spur-track the defendant saw fit to enter into an agreement with the plaintiffs. There was no evidence of any coercion. The evidence fails to show that such conditions existed as would reasonably have caused the Public Service Commission to order installation of the track even if its aid had been sought. The agreement negatives any idea of the track being made available to the public *as a matter of right*. It provides that "the lessor shall have the right, at all times, to use said new track in connection with the lessor's general railroad business or serve other persons and industries thereover," but adds a proviso that this right shall exist only "so long as said user shall not unreasonably interfere with the use of said new track in connection with the business of the lessee." Plainly, then, there could be no public use of the track *as a matter of right* because in that attempt the proviso would forbid it. It was a private track. The verdict of the jury which necessarily found that the spur-track was a public one can not be upheld. The evidence demanded a verdict in favor of the plaintiffs as a matter of law.

The foregoing establishes that (a) the answer of the defendant in the particulars attacked by special demurrers were only conclusions of the pleader and that the court erred in overruling the demurrers, and (b) that the court erred in overruling the general grounds of the plaintiffs' motion for new trial. In view of the

nature of the evidence, demanding a verdict as a matter of law in favor of the plaintiffs, and particularly the contract which we have held provided for a private track, and the principles of law which we have declared to be controlling, any rulings on the special grounds of the motion for new trial would seem to be unnecessary and will be so treated.

■ In the cross-bill of exceptions error is assigned by the defendant on the judgment of the court overruling its demurrers to the petition as amended, on the grounds that no cause of action was set forth and that a new alleged cause of action was set up by the amendment which pleaded a renewal of the original spur-track and lease contract (which was to terminate on August 31, 1943), effective on September 1, 1923, and ending on August 31, 1943. Enough has been said in the second division of this opinion to demonstrate, as we hold, that the petition as amended set forth a cause of action. The amendment was not subject to the objection urged. The contract relied upon was one which as amended constituted a continuous obligation from September 1, 1923, to August 31, 1943, and the injury, the payment for which was the basis of the plaintiffs' claim for indemnity under the contract, is shown to have occurred within such period, namely, on December 28, 1938.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Stephens, P. J., concurs.*

FELTON, J., dissenting. Paragraph 12 of the lease sued on provides: "That when cars loaded with commodities, consigned to the lessee, are placed on said new track, or other tracks, for being unloaded by the lessee, and the lessor's locomotive is detached from said car, or cars, delivery of such commodities shall be considered completed and liability of the lessor, as common carrier or warehouseman, shall forthwith terminate. Delivery of commodities in carload lots to the lessor by the lessee shall not be deemed to have been effected until the car or cars, into which said commodities have been loaded, has, or have been taken into the actual and physical possession of the lessor by moving said car, or cars, from said new track, to other tracks, or proper bill of lading issued by the lessor to the lessee for said commodities." The pleadings in the damage suit do not show that the person killed was engaged in the business of the Atlantic Company, and there is no evidence from that trial in the record. But, assuming that

he was one covered by the contract of indemnity, it was incumbent on the plaintiffs to prove that they were entitled to recover under the lease. The evidence does not show what kind of operation the train which injured the deceased who was unloading the car of coal was engaged in at the time of the injury. Regardless of whether the side track was a public or private one, the parties undertook to stipulate exactly to what extent operations over it were in the capacity of common carrier. The plaintiffs can not contract against their negligence, or against negligence for which they are chargeable, as a common carrier. Since it does not appear that the operation at the time of the injury was not in the capacity of a common carrier, the verdict for the defendant was demanded by the evidence.