A94A0283. NURSEFINDERS OF ATLANTA, INC. v. SUTTLES.
(445 SE2d 318)

JOHNSON, Judge.

Nursefinders of Atlanta, Inc., filed suit against William S. Suttles ("Suttles") as guardian of William Justin Suttles ("Justin") alleging that Suttles failed to pay for medical services rendered to his minor son, Justin. Both parties moved for summary judgment. The trial court denied Nursefinders' motion and granted Suttles' motion, holding that Justin's estate was not liable. Nursefinders appeals.

The record shows that in July 1983 Justin, then three years old, became semi-comatose following a dental procedure and has required continuous nursing care ever since. In September 1983, Suttles and his wife, April Suttles, retained Nursefinders to provide nursing services to Justin. Mrs. Suttles handled most of the negotiations with Nursefinders. In October 1983, Mr. Suttles purportedly signed a document authorizing his insurer to pay Nursefinders for its services and agreeing to be responsible for charges not paid by insurance. In June 1984, settlement funds were paid into a trust estate for Justin's benefit. It was not until June 1984 that Mr. Suttles was appointed guardian of Justin's estate. Nursefinders continued to provide medical services to Justin for the next seven years. During that period, Nursefinders sent all bills directly to Mr. Suttles' employer for insurance processing with copies sent to Mr. and Mrs. Suttles. With Mr. Suttles' authority, Mrs. Suttles signed several checks on the guardianship account to pay Nursefinders. In June 1992, Nursefinders filed

suit against Mr. Suttles only in his capacity as guardian. Suttles defended on the ground that, inter alia, the child's estate was not a party to any contract with Nursefinders.[1]

1. Nursefinders contends that the trial court erred in granting summary judgment to Suttles because the guardian ratified the contract. Specifically, Nursefinders argues that the guardian ratified the agreement by accepting the benefits of the arrangement and by consenting to Nursefinders' services. Nursefinders also argues that Mrs. Suttles, as agent for the guardian, ratified the contract.

"Where a contract or undertaking is personal, it binds only the original parties and those who may assume the obligation or ratify or adopt the contract. . . . A third person may, of course, assume the obligation expressly in writing, or he may do so by implication where his conduct manifests an intent to become bound. In the latter event all the circumstances must be considered, such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted its benefits." (Citations omitted.) *Central of Ga. R. Co. v. Woolfolk Chemical Works*, 122 Ga. App. 789, 791-792 (1) (178 SE2d 710) (1970). In this case, the evidence conflicts as to whether the guardian, either by his own conduct or by that of Mrs. Suttles as his agent, manifested an intent for the estate to be bound by the agreement with Nursefinders. On the one hand, there is evidence that the Suttles acted on their own behalf in their dealings with Nursefinders. For instance, the Suttles employed the services of and made payment arrangements with Nursefinders in their individual capacities nine months before the guardianship existed. Even after the creation of the guardianship, prior to the filing of this suit, Nursefinders looked solely to the Suttles as individuals for payment. The only signed agreement of record shows Mr. Suttles' name with no indication that he would be bound in any capacity other than in an individual one. Where a person uses no identifying words to show in what capacity he is purporting to act, he is presumed to act in his individual capacity.

---

[1] On motion for summary judgment, though not on appeal, Suttles also argued that the guardian cannot bind the estate without prior approval of the probate court and that therefore such a contract would be unenforceable. We disagree. "By the law a guardian is allowed all reasonable expenses and disbursements suitable to the circumstances of the [child] committed to his care. . . . [W]here the [guardian] has exercised [his authority] fairly and properly without the consent of the ordinary previously given, and where prompt and regular annual returns of his action in that behalf have been made, the ordinary, by his approval of such returns, may ratify the action." *Shipp v. McCowen*, 147 Ga. 711, 714-715 (95 SE 251) (1917). Under the facts of this case, prior approval was not necessary. Likewise, we find Suttles' other argument below, that the guardian was without authority to appoint an agent, to be without merit. OCGA § 29-2-21 allows the guardian to appoint an agent. Moreover, even assuming arguendo that Mr. Suttles was without authority to appoint an agent, that does not dispose of the question of whether he, as guardian, ratified the agreement.

See generally *Heath v. Costello*, 76 Ga. App. 94, 96 (44 SE2d 919) (1947). See also *Wojcik v. Lewis*, 204 Ga. App. 301, 304 (2) (419 SE2d 135) (1992). On the other hand, Mrs. Suttles was authorized to and did write several checks to Nursefinders out of the guardianship account. While "mere payment on the account of another cannot bind or create a liability against the payer for a remaining balance," *D. H. Overmyer Warehouse Co. v. W. C. Caye & Co.*, 116 Ga. App. 128, 134-135 (157 SE2d 68) (1967), such a payment may be considered some evidence of ratification. See *Central of Ga. R. Co. v. Woolfolk Chemical Works*, supra at 792 (1). There is also evidence that the guardian acquiesced and that he and the ward benefitted from the agreement. Consequently, it is not at all clear whether in accepting the services, making the care arrangements and making the payments after the guardianship was created, the Suttles were acting on behalf of the guardianship or in their individual capacities as parents.[2] Thus, the question of whether the guardian ratified the agreement with Nursefinders remains. Whether a ratification occurred is ordinarily a question for the jury. *Hunter v. Roberts*, 199 Ga. App. 318, 319 (2) (404 SE2d 645) (1991).

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Conerly v. First Nat. Bank &c.*, 209 Ga. App. 601 (1) (434 SE2d 143) (1993). Given the conflicts in the evidence, we cannot conclude that there is no genuine issue of material fact or that the evidence warrants judgment as a matter of law for either party. "A trial court's grant of summary judgment will not be sustained if there is *any* genuine issue of material fact, however imbalanced it may appear." (Emphasis in original; citation and punctuation omitted.) *Ga. Canoeing Assn. v. Henry*, 263 Ga. 77, 78 (428 SE2d 336) (1993). Accordingly, the trial court erred in granting summary judgment in this case.

2. Nursefinders also contends that the trial court erred in ruling that no benefit of legal consequence was conferred upon Justin's estate. The trial court erred in finding as a matter of law that no benefit occurred, because evidence in the record suggests the contrary to be the case. The record shows that the estate was created for management of the settlement proceeds Justin received as a result of his injuries. Included in the record are petitions to encroach and annual returns filed by the guardian which clearly indicate that the use of

---

[2] We do not imply that the parents are not bound in their individual capacities. They are not defendants in this case and that question is therefore not before the court.

estate funds is necessary for the payment of the ward's medical expenses, including nursing care. The evidence also reveals that Nursefinders provided satisfactory nursing care to the child. If providing continuous nursing care to a comatose ward does not constitute a benefit to his estate, we cannot imagine what does. However, whether the child's estate received a benefit is not a question of law, but one of fact. The trial court, therefore, erred in not allowing a jury to resolve the issue. On remand, if the jury finds that the contract was ratified by the guardian, it is authorized to find as well that the providing of nursing care is a benefit to the estate for which the estate is liable.

*Judgment reversed and case remanded. Andrews, J., concurs. Beasley, P. J., concurs in judgment only.*

DECIDED JUNE 6, 1994 —
RECONSIDERATION DENIED JUNE 23, 1994 —

*Schwall & Schwall, Emory A. Schwall, Robert S. Wayne,* for appellant.
*W. Thomas Craig, P. Matthew Ledbetter, Jr.,* for appellee.