65012. HIGH POINT SPRINKLER COMPANY OF ATLANTA et al. v. GEORGE HYMAN CONSTRUCTION COMPANY.

BANKE, Judge.

This is an action by the appellee, a construction contractor, to recover against the appellants for their alleged breach of a subcontract to install an automatic sprinkler system. Following a non-jury trial, the court entered judgment for the appellees in the amount of $80,374.30. In a previous appearance of the case before this court, we remanded for the entry of findings of fact and conclusions of law. See *High Point Sprinkler Co. v. George Hyman Constr. Co.,* 160 Ga. App. 192 (286 SE2d 763) (1981). The case is now before us again

following compliance with this order.

The following facts are undisputed. On August 9, 1975, George Hyman Construction Company of Georgia, Inc., contracted to build the City-County Building in Knoxville, Tennessee. Subsequently, that corporation merged into its parent company, the George Hyman Construction Company, which is the plaintiff/appellee in this case. On October 29, 1975, Hyman subcontracted with High Point Sprinkler Company of Atlanta, Inc., for the design and installation of the building's sprinkler and fire-protection system. High Point of Atlanta thereafter prepared the "shop drawings" required for the fabrication of the sprinkler piping, submitted them to the project's mechanical subcontractor for coordination with plans prepared by the other building trades, and delivered some of the material to the site. It was paid $18,293.71 by Hyman for this preparatory work. Shortly thereafter, Hyman received a letter dated January 17, 1977, from an attorney representing High Point Sprinkler Company of North Carolina, stating that the latter was taking over the sprinkler contract pursuant to its rights under a security agreement with High Point Sprinkler Company of Atlanta. The letter specifically informed Hyman that High Point of North Carolina would "complete the fire protection work on the project *in accordance with the requirements of the contract.*" (Emphasis supplied.)

Unlike High Point of Atlanta, High Point of North Carolina operated a strictly non-union shop. Because of this, and because it had received information that all the other subcontractors on the project were using union labor, it subsequently notified Hyman that it would not complete the work until the following provision of the subcontract was deleted: "The subcontractor shall not employ any workmen whose employment on the building or improvement may be objected to by any of the other subcontractors, the contractor, the architect, or the owner." It also demanded that Hyman agree to indemnify it for any damages and expenses "suffered or incurred by High Point Sprinkler Co. and arising out of or related to any labor dispute in connection with or related to this subcontract or performance under it." Hyman declined to agree to these changes and, by letter dated May 17, 1977, formally notified High Point that if it failed to proceed, another subcontractor would be retained to complete the work and that it would be held accountable for any additional expense incurred as the result of such action. At trial, Hyman introduced evidence showing that, using the lowest bidder to replace High Point, it had expended a total of $241,340.30 to complete the installation of the fire protection and sprinkler system, or $80,374.30 above the $160,966.00 amount of its subcontract with High Point of Atlanta. It also introduced evidence to the effect that

several non-union subcontractors had performed work on the project without incident. *Held:*

1. The trial court's conclusion that High Point of North Carolina was obligated to perform the subcontract was supported by evidence. Generally speaking, the assignee of a contract will be held to have assumed the assignor's obligations thereunder if he expressly or impliedly manifests an intention to become bound by those obligations. *Central of Ga. R. Co. v. Woolfolk Chem. Works, Ltd.,* 122 Ga. App. 789, 791-792 (178 SE2d 710) (1970), citing *Greer v. Pope,* 140 Ga. 743 (79 SE 846) (1913). High Point of North Carolina's letter of January 17, 1977, expressly agreeing to complete the fire protection work in accordance with the requirements of the subcontract clearly constitutes an assumption of High Point of Atlanta's obligations under that contract.

2. The trial court did not err in concluding that under the terms of the subcontract High Point was responsible for coordinating its shop drawings with those of the other trades and in further concluding that it had breached this duty, thereby causing additional expense to Hyman. The fact that Hyman was responsible to the owner for the proper completion of this coordination work did not affect High Point's duty to Hyman under the subcontract. While there is evidence to the effect that High Point of Atlanta in fact submitted all of its shop drawings to the mechanical contractor for coordination as required by the subcontract, there is also evidence that it failed to participate in a series of meetings and telephone conversations which took place between the various trades for the purpose of completing the coordination process. Findings of fact made by the trial court when trying a case without a jury will not be disturbed if there is "any evidence" to support them. *Kingston Dev. Co. v. Kenerly,* 132 Ga. App. 346 (1) (208 SE2d 118) (1974).

3. Similarly, the trial court did not err in concluding that the contract was not in violation of the Tennessee right-to-work laws. There was no express provision in the subcontract requiring union-only labor, and although High Point presented evidence to the effect that Hyman had attempted to impose such a condition, Hyman's witnesses testified to the contrary. Also, as previously indicated, High Point introduced evidence that other non-union subcontractors had worked on the project without incident.

4. Finally, there was ample evidence to support the amount of damages awarded by the trial court. Although High Point presented evidence tending to show that Hyman had acted unreasonably in using the shop drawings without first conducting a "field check" to insure that they meshed with the construction which had already taken place, Hyman presented testimony tending to show that its

reliance on the shop drawings was justified. Each element of damage claimed and awarded was documented, and the trial court was not left to guesswork or speculation in determining the amount of the award.

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 19, 1982 —
REHEARING DENIED DECEMBER 7, 1982 — 

*Charles Ratz, John C. Gray,* for appellants.
*W. Hensell Harris, Jr.,* for appellee.